JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Joseph F. Pietrolungo ("father"), appeals the trial court's decision modifying his child support obligation. Finding no merit to the appeal, we affirm.
 {¶ 2} The parties were divorced in 1997 and the father was ordered to pay plaintiff-appellee, Thelma Citta-Pietrolungo ("mother"), $7,300 per month for the benefit of their three children.
 {¶ 3} In September 2000 and again in April 2001, the father moved to modify his child support obligation based on a change of circumstances, i.e., his income had significantly decreased since the divorce, the mother's income had significantly increased, the current support obligation exceeded the children's needs, and the current support was not in the children's best interest.
 {¶ 4} The magistrate conducted a hearing on the motions in 2002 and recommended that the court deny the father's 2000 motion because the change of circumstances alleged did not yield a ten percent difference between the previous and the recalculated child support worksheets. However, the magistrate recommended that the court grant the father's 2001 motion, modifying his support payment from $7,300 per month to $1,500 per month per child.
 {¶ 5} Both parties filed objections to the magistrate's decision. The trial court modified the magistrate's decision by granting both motions for modification and ordering the father to pay $6,000 per month ($2,000 per month per child, plus the 2% processing fee), to be applied retroactively to the dates modification was sought.
 {¶ 6} The father appeals, raising five assignments of error.
 Standard of Review {¶ 7} A trial court's decision regarding a child support obligation will not be reversed on appeal absent an abuse of discretion. Pauly v.Pauly, 80 Ohio St.3d 386, 390, 1997-Ohio-105, 686 N.E.2d 1108. An abuse of discretion is "more than an error of law, it connotes that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. So long as the decision of the trial court is supported by some competent, credible evidence going to all the essential elements of the case, we will not disturb it. Masitto v. Masitto (1986), 22 Ohio St.3d 63, 66,488 N.E.2d 857.
 {¶ 8} With these principles in mind, we proceed to address the father's assignments of error.
 "Law of the Case" Doctrine {¶ 9} Within all of the father's assignments of error, he argues that the trial court committed reversible error by failing to follow the "law of the case." Contrary to his argument, we find the trial court did not err because a reviewing court has not addressed the child support obligation.
 {¶ 10} The doctrine of law of the case "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3,462 N.E.2d 410, citing Gohman v. St. Bernard (1924), 111 Ohio St. 726, 730,146 N.E. 291. The underlying rationale of this doctrine is to maintain consistent results in a case by conclusively settling issues that have previously been litigated, to avoid endless litigation, "and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." City of Hubbard ex rel. Creed v. Sauline, 74 Ohio St.3d 402,404, 1996-Ohio-174, 659 N.E.2d 781. See, also, Little Forest Med. Ct. v.Ohio Civil Rights Comm. (1993), 91 Ohio App.3d 76, 81, 631 N.E.2d 1068.
 {¶ 11} In 2002, this court considered Pietrolungo v. Pietrolungo,
Cuyahoga App. No. 80960, 2002-Ohio-4589 ("Pietrolungo I"). The appeal sought review of the trial court's adoption of the magistrate's decision prior to conducting an evidentiary hearing and whether the relocation of the children to New Jersey was in their best interest. The father also argued as an assigned error that the court incorrectly calculated his child support obligation. This court overruled his assigned errors and found no jurisdiction to consider the child support issue because the father had not filed a motion to modify support with the trial court.
 {¶ 12} Therefore, because this court did not address the merits of the child support obligation in Pietrolungo I, the trial court, in the instant matter, had no "law of the case" to follow on the support issue. Accordingly, the arguments raising law of the case lack merit.
 Child Support Worksheet {¶ 13} In his first assignment of error, the father argues that the trial court incorrectly completed the child support guideline worksheet. This assignment of error encompasses three specific issues: (1) whether the trial court properly determined the parties' gross incomes, (2) whether the trial court properly included health insurance and automobile expenses in his gross income, and (3) whether the trial court properly determined the child care expenses.
 Gross Income of the Parties {¶ 14} The father argues that the trial court failed to determine the gross incomes of the parties pursuant to statute. He claims that the court erroneously included his shareholder "buy-in" amounts and his employer's pension contributions in his gross income. The father also claims that the court failed to include the parties' dividend and interest incomes when completing the child support guideline worksheet.
 {¶ 15} Former R.C. 3113.215(A)(2) defined "gross income" as:
"* * * the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes, but is not limited to, income from salaries, wages, overtime pay and bonuses to the extent described in division (B)(5)(d) of this section, commissions, royalties, tips, rents, dividends, severance pay, pensions, interest, trust income, annuities, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, benefits received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration, spousal support actually received from a person not a party to the support proceeding for which actual gross income is being determined, and all other sources of income; income of members of any branch of the United States armed services or national guard, including, but not limited to, amounts representing base pay, basic allowance for quarters, basic allowance for subsistence, supplemental subsistence allowance, cost of living adjustment, specialty pay, variable housing allowance, and pay for training or other types of required drills; self-generated income; and potential cash flow from any source."
R.C. 3109.02 defines "gross income" as:
"* * * the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income. `Gross income' includes income of members of any branch of the United States armed services or national guard, including, amounts representing base pay, basic allowance for quarters, basic allowance for subsistence, supplemental subsistence allowance, cost of living adjustment, specialty pay, variable housing allowance, and pay for training or other types of required drills; self-generated income; and potential cash flow from any source."
 Shareholder "Buy-in" Amounts {¶ 16} The father argues that the trial court erroneously determined that his gross income should be increased by his shareholder "buy-in" amounts to The Heart Group, Inc. He argues that these amounts should not be included as income, but instead should be deducted as "ordinary and necessary" expenses incurred by him in generating gross receipts.
 {¶ 17} The determination as to whether a child support obligor's expenditures fall within the definition of "ordinary and necessary" is within the sound discretion of the trier of fact. Ratti v. Rogers (Dec. 27, 1999), Knox App. No. 99 CA 3. Further, each case must be reviewed individually, taking into consideration the parties' total financial circumstances. Id., citing Kamm, supra at 178.
 {¶ 18} In calculating child support, "gross income" includes "self generated income." R.C. 3113.215(A)(2); R.C. 3119.01(C)(7). "Self generated income" means "gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, * * * minus ordinary and necessary expenses incurred by the parent in generating the gross receipts." R.C. 3113.215(A)(3); R.C. 3119.01(C)(13). Ordinary and necessary expenses are the "actual cash items expended by the parent or the parent's business * * *." R.C. 3113.215(A)(4)(a); R.C. 3119.01(C)(9)(a).
 {¶ 19} In support of his argument, the father cites Kamm v. Kamm
(1993), 67 Ohio St.3d 174, 616 N.E.2d 900, and Woods v. Woods (1994),95 Ohio App.3d 222, 642 N.E.2d 45. In Kamm, a self-employed farmer sought to deduct from his gross income the purchase of farm machinery as an ordinary and necessary business expense. The court allowed the deduction, holding at paragraph one of the syllabus:
"Acquisition of a capital asset by a self-employed, child-support obligor may be deductible against such obligor's gross receipts for the purpose of computing the obligor's child-support obligation in accordance with R.C. 3113.215, provided the acquisition is otherwise both `ordinary and necessary' and is acquired by an actual cash expenditure."
 {¶ 20} In Woods, the court authorized a self-employed truck driver to deduct both the principal and interest loan payments on his truck as an ordinary and necessary business expense. The Woods court observed: "There can be no question but that the purchase of a truck by a self-employed truck driver is an ordinary and necessary expense to the driver." Id. at 225.
 {¶ 21} However, in Higgins v. Danvers (Nov. 6, 1997), Cuyahoga App No. 71352, this court held that a father's capital contribution for purchase of his equity interest in a partnership did not constitute "ordinary and necessary business expenses." Id. We distinguished Kamm andWoods, holding that:
"* * * one does not reasonably expect that a self-employed accountant ordinarily and necessarily possesses or requires an equity interest in a partnership in order to generate income. * * * [a]n accountant's ownership of an equity interest in a partnership, `though arguably helpful' in the generation of business income, is quite unnecessary for such a purpose."
 {¶ 22} We find this reasoning equally applicable to the instant case.
 {¶ 23} While a shareholder of a corporation generates more income to be considered for child support purposes, this court has determined that those expenses are not "ordinary and necessary" expenses. See, Higgins,
supra.
 {¶ 24} The fact remains that the "buy-in" amounts were income that the father would have actually received had he not chosen to become a shareholder. Regardless as to how the funds are characterized, they are still considered in calculating gross income for child support purposes. Moreover, if we found that the amounts should be excluded, once the "buy-in" is complete, another motion for modification could be filed because the amounts once used towards the "buy-in" would now be considered income.
 {¶ 25} Even if we concluded that the "buy-in" contributions were ordinary and necessary expenses, thus deductible from gross income, "allowance of a deduction for acquisition of a capital asset by a self-employed, child support obligor against such obligor's gross receipts may be grounds for deviation from the child support guidelines * * *, providing the `best interest of the child' is considered." Kamm,
supra at paragraph two of the syllabus.
 {¶ 26} Therefore, we find that the court did not abuse its discretion by including the father's shareholder "buy-in" amounts to compute his gross income.
 Employer Pension Contributions {¶ 27} The father also claims that the trial court erred when it included as income funds which his employer, The Heart Group, Inc., contributed to his retirement plan.
 {¶ 28} We note that former R.C. 3113.215 and current R.C. 3119.01
neither exclude nor include as gross income pension contributions made by a child support obligor's employer.
 {¶ 29} A careful reading of the trial court's judgment entry, however, specifically excluded The Heart Group's pension contributions made on behalf of the father:
"The Court finds that the above stated `benefits' the Defendant receives should be considered as part of the Defendant's gross income. The following are the amounts said benefits equal per year minus his yearly bonuses and pension contributions made by The Heart Group: * * *." (Emphasis added).
 {¶ 30} The entry then computed the father's yearly bonuses and added those figures on the child support computation worksheet. The entry does not add the pension contributions made on behalf of the father. Moreover, the father fails to demonstrate where the pension contributions were added to his gross income and he fails to indicate what his gross income would be minus the pension contributions. We are unable to ascertain from the father's arguments and the judgment entry that the pension contributions were included in the father's gross income as he claims. Therefore, we find no merit to his argument. See, App. R. 12(A)(2).
 Dividend and Interest Income {¶ 31} The father also argues that the trial court erred by failing to include the parties' dividend and interest income in the child support computation worksheets. We disagree.
 {¶ 32} We note that the trial court did not separately compute the dividend and interest income of each party as required by the child support computation worksheet. However, the trial court expressly stated in its entry that it included interest and dividend income when computing the parties' wages/salary incomes:
"The Court finds that the Defendant earned the following incomes from 1997 through 2001, which includes wages, as determined by the formula above, interest, dividends, and reoccurring capital gains: * * *. (Emphasis added).
* * *
According to Plaintiff's Federal Income Tax Returns, Plaintiff has the following amounts as annual gross incomes, which amounts includeinterest, dividends and reoccurring capital gains monies * * *." (Emphasis added).
 {¶ 33} Although the court did not separately compute the parties' interest and dividend income on the worksheets, it included it in the parties' gross incomes. Therefore, the court complied with the mandates for computing the child support obligation pursuant to former R.C. 3113.215
and R.C. 3119.01. The father's argument is without merit.
 Health Insurance, Child Care and Automobile Expenses {¶ 34} The father also argues that the trial court erred in including health insurance available to the defendant as income, that the amount utilized for child care had no relation to the actual work-related child care expenses, and that the trial court erred in including automobile expenses into his gross income because they were already included in his W-2 income.
 {¶ 35} We first note that the father has failed to support these arguments with any legal authority as required by App. R. 16(A)(7). "If an argument exists that can support this assignment of error, it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), Summit App. Nos. 18349 and 18673. Because the father has failed to cite any legal authority to support his arguments, this court will not make his arguments for him. See, App. R. 12(A)(2). Moreover, the father fails to demonstrate the amount to be deducted from his gross income for health care and automobile expenses.
 {¶ 36} A thorough reading of the court's judgment entry clearly shows that the court contradicted itself in calculating the child care expenses. The court stated on page five of its entry, "[T]he Court agrees that the extended day care expenses should not be included because it is included in the child support obligation." However, when it computed the child care expenses on page seven, the court included each child's after school day care expenses.
 {¶ 37} Although we find that the court made this error, the difference this deduction would make in the child support obligation would be minimal. The father has not demonstrated that this difference is anything more than de minimis. Tomasik v. Tomasik (Jan. 29, 1997), Summit App. No. CA 17822. Even if it was error, it was not prejudicial to the father. Moreover, the court was allowed to deviate from the child support worksheet because of the combined gross incomes of the parties, thus making any error clearly harmless.
 {¶ 38} Accordingly, the father's first assignment of error is overruled.
 Pre-amendment Child Support Obligation {¶ 39} In his second assignment of error, the father argues that the trial court abused its discretion by not calculating child support pursuant to former R.C. 3113.215 for the period of September 6, 2000 though April 23, 2001.
 {¶ 40} Former R.C. 3113.215(B)(2)(b) provided:
"If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court or agency shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. When the court or agency determines the amount of the obligor's child support obligation for parents with a combined gross income greater than one hundred fifty thousand dollars, the court or agency shall compute a basic combined child support obligation that is no less than the same percentage of the parents' combined annual income that would have been computed under the basic child support schedule and under the applicable worksheet in division (E) of this section, through line 24, or in division (F) of this section, through line 23, for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount and enters in the journal the figure, determination, and findings."
 {¶ 41} However, the court may deviate from the amount of support that would normally result from the basic child support schedule and worksheet upon an express finding that the amount would be unjust, inappropriate, or not in the best interest of the child. Id.; R.C. 3113.215(B)(2)(c) and3113.215(B)(3). In making its determination whether to deviate from an amount of support, the court may consider, including but not limited to, extended times and extraordinary costs associated with visitation, significant in-kind contributions from a parent, physical and emotional needs of the child, and any other factor. R.C. 3113.215(B)(3)(a)-(p).
 {¶ 42} In the instant case, the court found that the amount generated by the Ohio Child Support Schedule ($8,713.10 per month or $2,904.37 per child) would be unjust, inappropriate, and not in the best interest of the parties' minor children because of the in-kind contributions the father made on behalf of his children, the father's extended period of parenting time during the summer months, and the costs associated with his visiting the children who reside out of state. Thus, the court granted the father's motion for modification and deviated downward from the scheduled obligation and the original child support order, imposing a child support obligation of $6,000 per month for the three minor children.
 {¶ 43} Although the father maintains that this amount is still unreasonably excessive, we find nothing arbitrary, unreasonable, or unconscionable about this amount. Therefore, the court did not abuse its discretion in ordering child support in the amount of $6,000 per month for the three minor children.
 {¶ 44} Accordingly, the second assignment of error is overruled.
 Post-amendment Child Support Obligation {¶ 45} In his third assignment of error, the father argues that the trial court abused its discretion when it ordered an extraordinary child support obligation commencing April 23, 2001 because the obligation is completely unrelated to the needs and the standard of living of the children, in violation of R.C. 3119.04.
 {¶ 46} R.C. 3119.04(B) provides in pertinent part:
"(B) If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, or the child support enforcement agency, with respect to an administrative child support order, shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings."
 {¶ 47} Again, the court may deviate from the amount of support that would normally result from the basic child support schedule and worksheet upon an express finding that the amount would be unjust, inappropriate, or not in the best interest of the child. Id.; R.C. 3119.22. In making its determination whether to deviate from an amount of support, the court may consider any of the factors in R.C. 3119.23.
 {¶ 48} In the instant case, the court found that the amount generated by the Ohio Child Support Schedule ($2,138.81 per month or $712 per month per child) would be unjust, inappropriate, and not in the best interest of the parties' minor children because "of the additional tutorial expenses to assist the children in achieving their capacity, the lifestyle and social obligations for the children who have enjoyed the benefits of both parents being medical doctors, the increased costs of three girls' personal needs, travel expenses, housing and their extra-curricular activities." The court also considered the father's in-kind contributions, including the payment of private school tuition. Thus, the court deviated upward from the scheduled support obligation. In doing so, however, the court granted the father's motion to modify, which lowered his original support payment from $7,300 per month to $6,000 per month.
 {¶ 49} Again, the father maintains that this amount is unjust, inappropriate, and still unreasonably excessive because he already pays a substantial portion of the children's extraordinary expenses. We find nothing arbitrary, unreasonable, or unconscionable about court's decision in ordering this amount. Therefore, the court did not abuse its discretion in ordering child support in the amount of $6,000 per month for the three minor children.
 {¶ 50} Accordingly, the third assignment of error is overruled.
 Deference to the Magistrate {¶ 51} The father argues in his fourth assignment of error that the trial court abused its discretion when it failed to give deference to the magistrate who tried this case and who was best able to weigh the credibility of the witnesses.
 {¶ 52} Civ. R. 53 places upon the court the ultimate authority and responsibility over the referee's findings and rulings. Hartt v. Munobe,67 Ohio St.3d 3, 6, 1993-Ohio-177, 615 N.E.2d 617. This court has found that the trial court must make its own de novo determination, in light of any filed objections, by undertaking an independent analysis of the issues. In re Tutt (Aug. 31, 2000), Cuyahoga App. No. 77028; Burkes v.Burkes (Mar. 23, 2000), Cuyahoga App. No. 75518; AAA Pipecleaning Corp.v. Arrow Uniform Rental (July 22, 1999), Cuyahoga App. No. 74215.
 {¶ 53} It is the primary duty of the court, and not the magistrate, to act as a judicial officer. Normandy Place Assoc. v. Beyer (1982),2 Ohio St.3d 102, 105, 443 N.E.2d 161. The court must approve the magistrate's decision in order for it to have any validity or binding effect. Civ. R. 53(E).
"We reject any concept which would suggest that a trial court may in any way abdicate its function as judge over its own acts. We therefore hold that the trial court has the responsibility to critically review and verify to its own satisfaction the correctness of such a report." Id.
 {¶ 54} Therefore, we find that a court does not abuse its discretion when it fails to defer to the magistrate because the court must independently review the magistrate's decision.
 {¶ 55} Accordingly, the fourth assignment of error is overruled.
 Overall Error {¶ 56} In his final assignment of error, the father argues that the trial court's failure to correctly calculate the parties' incomes compounded other problems.
 {¶ 57} "An appellate court may disregard an assignment of error pursuant to App. R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as required by App. R. 16(A)(7)."State v. Martin (July 12, 1999), Warren App. No. CA99-01-003, citingMeerhoff v. Huntington Mortgage Co. (1995), 103 Ohio App.3d 164, 169,658 N.E.2d 1109. Because the father has failed to cite any legal authority to support his arguments, this court will not make his arguments for him. See, Cardone, supra.
 {¶ 58} Accordingly, the final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Domestic Relations Division of the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, J. and Rocco, J. concur