OPINION
{¶ 1} Defendant-appellant William Weisgerber appeals the October 20, 2005 Order of the Delaware County Court of Common Pleas, Domestic Relations Division, modifying his child support obligation owed to plaintiff-appellee Melinda Weisgerber, modifying the parties' shared parenting plan and finding him in contempt.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The parties were married on June 21, 1986, and two children were born of the marriage: Amanda, born September 6, 1991 and Mitchell, born May 25, 1995. Appellee filed a complaint for divorce on December 19, 2001. The parties executed a Shared Parenting Plan and a Separation Agreement on January 23, 2002, which were incorporated into the final divorce decree.
 {¶ 3} On July 7, 2003, appellee filed a post-decree motion for contempt and a motion to modify the shared parenting plan. In her motion, appellee requested the trial court review child support and the allocation of costs as related to the children.
 {¶ 4} On October 6, 2003, appellant filed a post decree motion for reallocation of parental rights and a motion for contempt.
 {¶ 5} On November 23, 2003, appellee filed a second contempt motion alleging appellant had not paid child support and spousal support as ordered.
 {¶ 6} On May 26, 2004, the Delaware County CSEA filed a motion to show cause and a motion for lump sum judgment. In September of the same year, appellee filed a third motion for contempt.
 {¶ 7} Appellant is the president and sole owner of Hall of Frames, Inc., a subchapter S corporation. His business is wholesale furniture sales. Appellant purchased the business in 1998 from his father, and agreed to begin making payments thereon in 1999. During the marriage, appellee assisted appellant by doing bookkeeping, clerical work and other responsibilities for the business. Appellant paid appellee a salary for her services.
 {¶ 8} It is undisputed Hall of Frames began making payments for the purchase of the business to appellant's father in 1999.
 {¶ 9} On July 7, 2003, appellee filed a motion seeking, in part, relief from her obligation to pay her portion of the private school expense.
 {¶ 10} Pursuant to the terms of the separation agreement, appellee agreed to pay her proportionate share of their minor child's private education commencing with the 2003-2004 school year. Appellant agreed to pay the tuition for the 2002-2003 school year. Appellant also agreed to pay appellee non-modifiable spousal support of $1,200 per month for 60 months and child support of $1,000 per month.
 {¶ 11} The agreement also provided,
 {¶ 12} "2. Defendant shall pay to Plaintiff one-half of all money paid to Defendant's father Richard Weisgerber from October 1, 2001 until the date of the final hearing. This amount shall be verified by bank statements prior to final hearing and shall be paid to Plaintiff at the final hearing.
 {¶ 13} "3. Defendant shall save Plaintiff harmless and be totally responsible for all debts and expenses of this entity."
 {¶ 14} Via an Order of October 20, 2005, the trial court relieved appellee of her obligation to pay her share of the son's private school tuition, modified appellant's child against appellant for failure to make his court ordered support payments.
 {¶ 15} Appellant now appeals, assigning as error:
 {¶ 16} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS CALCULATION OF INCOME FOR THE PARTIES FOR PURPOSES OF CHILD SUPPORT.
 {¶ 17} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN TERMINATING OR MODIFYING THE SHARED PARENTING PLAN.
 {¶ 18} "III. THE TRIAL COURT ERRED IN AWARDING THE DEPENDENCY EXEMPTIONS TO PLAINTIFF FOR 2003, 2004 AND 2005.
 {¶ 19} "IV. THE TRIAL COURT ERRED IN FAILING TO SPECIFY WHAT ATTORNEY FEES WERE ACTUALLY RELATED TO THE CONTEMPT."
 I. CALCULATION OF APPELLANT'S INCOME. {¶ 20} In his first assignment of error, appellant argues the trial court erred in calculating the income of the parties for purposes of child support. Specifically, appellant asserts the trial court erred in adding to his income the actual cash payments made to his father for the acquisition of Hall of Frames, Inc.
 {¶ 21} Appellant argues the actual cost of acquiring an income producing asset is an ordinary and necessary business expense for the purpose of determining gross income. Kamm v.Kamm (1993), 67 Ohio St.3d 174. Loan payments made to acquire the income producing asset are fully deductible from gross income of a self-employed obligor in the year the payments are actually made. Woods v. Woods (1994), 95 Ohio App.3d 222.
 {¶ 22} R.C. 3119.01(C) provides:
 {¶ 23} (C) As used in this chapter:
 {¶ 24} "(7) "Gross income" means, except as excluded in division (C)(7) of this section, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; * * *
 {¶ 25} * * *
 {¶ 26} "(9)(a) "Ordinary and necessary expenses incurred in generating gross receipts" means actual cash items expended by the parent or the parent's business and includes depreciation expenses of business equipment as shown on the books of a business entity.
 {¶ 27} "(b) Except as specifically included in "ordinary and necessary expenses incurred in generating gross receipts" by division (C)(9)(a) of this section, "ordinary and necessary expenses incurred in generating gross receipts" does not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business.
 {¶ 28} * * *
 {¶ 29} "(13) "Self-generated income" means gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. "Self-generated income" includes expense reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses."
 {¶ 30} The record reflects: In 1998, appellant entered into a written agreement with his father to purchase the business. Pursuant to the terms of the agreement, appellant was to pay his father as follows:
 {¶ 31} "[The] total sum of $225,000.00 to be paid out over a fifteen year period starting January 1, 1999 in increments of $15,000 each year. This total is based on approximately $212,500.00 base and $12,500 of interest at 10.0% * * *. Any early payment still to total $225,000.00."
 {¶ 32} Appellant asserts payments were made to his father during the course of the marriage. He contends he could not generate any income as a self-employed individual, but for the purchase of the business. Accordingly, he concludes the payment of the purchase price every year is an actual expense which is unequivocally ordinary and necessary.
 {¶ 33} The corporate records reflect appellant pays interest and amortizes the obligation at $7,755 per year. In 2002, appellant paid his father $30,000 due to his failure to pay his obligation in 2001.
 {¶ 34} Upon review of the record, we do no find a dispute as to whether appellant made payments to his father during the course of the marriage. Rather, appellee testified at trial:
 {¶ 35} "Q. * * * Okay. You talked a little bit about payments to Bill's father and the evaluation of the business. When you were married to Bill prior to your divorce, did Bill make payments to his dad?
 {¶ 36} "A. Yes.
 {¶ 37} "Q. Okay. Do you remember how many years he made payments to his dad before you were divorced in March of '02?
 {¶ 38} "A. No. I don't know the exact number.
 {¶ 39} "Q. Okay. But — what was that exhibit you showed me? Your ZZ exhibit. That's the one with the agreement with Bill.
 {¶ 40} "A. Okay. Go ahead, please.
 {¶ 41} "Q. The reason I ask is, you know, there's a signature on one of 11-28 of — looks like '98. I can't make that out real well, but that's what it looks like to me. Do you know whether or not '98 rings a bell? 1998 as being the year that Bill started making payments to his dad?
 {¶ 42} "A. It matches the number on the agreement date on top.
 {¶ 43} "Q. Okay. And you testified just now that you do remember that he made payments before your divorce?
 {¶ 44} "A. Yes, I do.
 {¶ 45} "Q. All right. Does it jar your memory a little bit now that he made payments for two, three years, four years before your divorce?
 {¶ 46} "A. Whatever Bill's book say is what he paid.
 {¶ 47} "Q. Okay. But we're disputing that payments were made to his dad while you two were married?
 {¶ 48} "A. No. I'm not.
 {¶ 49} "Q. Okay. All right. And so it was an obligation before you were divorced from the business, and Bill paid that obligation before you were divorced, didn't he?
 {¶ 50} "A. Bill paid what he chose to pay out of his business. It was his business."
 {¶ 51} Tr. at 592-594.
 {¶ 52} With regard to the inclusion of the payments in the calculation of appellant's income, the trial court held:
 {¶ 53} "The Court does not find William's agreement with his father to be an "ordinary or necessary" business debt because this payment does not help William generate gross receipts. Therefore, the Court added back each year the amortization of $7,755 and the interest declared on the corporate tax return."
 {¶ 54} The trial court concluded appellant received nothing for this agreement, and,
 {¶ 55} "Under R.C. 3119.01(C)(9)(b), only those actual cash items expended by a parent of his business to generate gross receipts and depreciation expenses for replacement equipment are excluded from income."
 {¶ 56} The trial court's October 20, 2005 Order citedCitta-Pietrolungo v. Pietrolungo, 2005-Ohio-4814, in which an accountant shareholder's "buy-in" amounts were included in his gross income. However, we find the case distinguishable as this case does not involve an equity interest in a partnership. Rather, appellant's purchase of his father's business in its entirety necessarily produced his income as a sole-proprietor. Appellant's payments were an actual ordinary and necessary expense of the business, without which appellant could not sell his product.
 {¶ 57} Appellant's second argument with regard to the trial court's computation of the parties' income related to his second wife's salary. Appellant's second wife now helps in his business, as did appellee in this action. She is paid a salary, and testified at trial she uses her salary to pay the home mortgage, utilities, and household bills.
 {¶ 58} The trial court added back the wife's salary to appellant's income as "self-generated income" The court concluded, pursuant to R.C. 3119.01(C), the benefit of the reimbursements she gives to appellant are significant and reduce his personal living expenses. The court further noted the income could be considered under "all other sources of income" and "potential cash flow from any source."
 {¶ 59} As set forth above, R.C. 3119.01(C) defines "self-generated income as,
 {¶ 60} "* * * gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. "Self-generated income" includes expense reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses.
 {¶ 61} The trial court concluded appellant's spouse's income should be included in calculating his income as her income produced a benefit to appellant and reduces his personal living expenses.
 {¶ 62} However, R.C. 3119.05(E) provides:
 {¶ 63} "(E) When the court or agency calculates the gross income of a parent, it shall not include any income earned by the spouse of that parent." (Emphasis added)
 {¶ 64} Appellant argues the mandatory language of the statute precludes the trial court from adding into appellant's income the salary of his spouse. To hold otherwise, appellant argues, would allow any income earned by a spouse which is deposited into a joint checking account to be considered an in-kind benefit to a self-employed individual. We agree. R.C. 3119.05 clearly precludes the trial court from including any income earned by a spouse of the parent, and R.C. 3119.01(C) cannot be used to circumvent the statute.
 {¶ 65} Finally, the trial court added back depreciation in calculating appellant's income. Specifically, the trial court found:
 {¶ 66} "There is a legitimate argument from both parties as to whether or not depreciation should be added back to William's gross income for child support purposes. Unfortunately, there was insufficient testimony and conflicting tax returns and profit and loss statements. It appeared that most of the depreciation was for a car(s), which the parties paid for in a lump sum prior to the divorce. For these reasons, the Court added back depreciation in this case."
 {¶ 67} The testimony at trial indicates the depreciation related to a 2002 Honda Minivan the company purchased in 2002. Appellant asserts the van was purchased to replace a 1999 Volvo appellee received in the divorce. The depreciation also related to a computer purchased in 2003, and business equipment purchased in 2002 and 2003. The depreciation expenses were set forth in each of the tax returns for the company for 2002, 2003 and 2004.
 {¶ 68} Depreciation expenses associated with the production of income are properly deducted from the gross receipts of a self-employed support obligor. Riggle v. Riggle (Dec. 21, 2000), Tusc. App. No. 2000AP030024. However, the depreciation expenses are required to be shown on the company's books. Id.
Where an item is actually purchased in one year with a cash expenditure, the depreciation should be allowed over a period of years pursuant to the depreciation schedule established by the internal revenue code.
 {¶ 69} Based upon the above, the trial court erred in adding the allowable depreciation expenses in the calculation of appellant's income.
 {¶ 70} Appellant's first assignment of error is sustained.
 II. MODIFICATION OF THE SHARED PARENTING PLAN. {¶ 71} Appellant's second assignment of error asserts the trial court erred in terminating or modifying various provisions of the shared parenting plan.
 {¶ 72} Specifically, appellant argues the trial court, absent a request for modification, completely eliminated the private school tuition payments for the parties' son, added a fifth weekend for appellee in the months in which there are five weekends, eliminated appellant's input into medical decisions, and modified the Sunday transfer time.
 {¶ 73} With regard to the parties' obligations to pay their son's private school tuition, the shared parenting plan provides:
 {¶ 74} "B. The parties agree that Mitchell shall continue to attend Columbus Academy and Defendant shall be responsible for the entire cost of his education there until August 2003, including transportation. Thereafter, the parties shall divide the cost of Mitchell's tuition, including transportation, on a pro rata basis as set forth on the Child Support Worksheet in effect at the time the expense is incurred (currently, Plaintiff shall be responsible for 16% of the expenses and Defendant shall be responsible for 84%. See attached Exhibit A, line 16). * * *."
 {¶ 75} Generally, agreements to educate minor children in a private school are enforceable by the courts. Neiheiser v.Neiheiser (Jan. 13, 2000), Cuyahoga App. No. 75184. A court may not place limitations on a parent's obligation to pay educational expenses where there is no such limitation in the decree.Wesselman v. Wesselman (1993), 88 Ohio App. 3d 338. Rather, a trial court may consider the parent's ability to afford educational expenses only where the education provision in the decree is ambiguous. Id; See Wurts v. Wurts (Sept. 19, 1986), Montgomery App. No. 9098, unreported, 1986 WL 10315.
 {¶ 76} A court may consider the private school tuition in terms of granting a deviation from the child support obligation where the parties have shared parenting. R.C. 3119.05.
 {¶ 77} In this case, the trial court's October 20, 2005 order states:
 {¶ 78} "Another issue was Melinda's request that she no longer be obligated to pay for their son's tuition at Columbus Academy. Because William has been able to obtain grants and/or scholarships, the costs have been approximately $6,000 per year. Full tuition is over $15,000 per year. The Court finds that William has not paid his ordered support and neither Melinda nor William has the resources to pay for their son's private school. William's desire to educate their son at the expense of their daughter who does not attend a private school, and failing to pay Melinda the ordered support, is not in the best interest of these children. Beginning with the 2005-2006 school year, neither parent is required to pay for their son's education for this year or any year thereafter. The Court told the parties in March that neither party could afford this expense. In March, their son's tuition was equivalent to what William owed Melinda in back spousal support for the year 2004. For the 2003-2004 and 2004-2005 school years, the parties shall pay tuition pursuant to the percentage of income on the revised child support worksheets. In 2003, it is 30% for Melinda and 70%, William. In 2004, it is 40% for Melinda and 60%, William."
 {¶ 79} While agreements relative to the payment of private school tuition can be considered by the trial court to justify a deviation in child support, in this case the trial court's holding modifies the parties' shared parenting plan. As set forth above, in a case such as this where the education provision is unambiguous and the agreement does not place a limitation on the parties' obligations, the trial court is without authority to modify the education provision. The trial court's authority to deviate from the child support guidelines is not tantamount to the power to modify an agreement between the parties.
 {¶ 80} Accordingly, appellant's assignment of error is sustained with regard to the trial court's elimination of the requirement the parties share in the cost of the private school tuition.
 {¶ 81} Appellant further argues the trial court failed to make any findings regarding the best interests of the children in its modifications of the parties' shared parenting plan including the addition of a fifth weekend, elimination of appellant's input into medical decisions and modification of the Sunday transfer time. Specifically, appellant argues the trial court failed to make a determination the modifications were in the best interest of the children, R.C. 3109.04(E)(2)(b).
 {¶ 82} The statute provides:
 {¶ 83} "(b) The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children."
 {¶ 84} A review of the trial court's order set forth above demonstrates the trial court did make a determination relative to the best interest of the children. The trial court specifically found, "* * * the Court finds that that [sic] several modifications are necessary and that such modifications are in the best interest of the children." We find while not specifically requested, the trial court did not abuse its discretion in making these modifications to the shared parenting plan upon its own motion.
 {¶ 85} Appellant's second assignment of error is sustained; in part, and overruled, in part.
 III. DEPENDENCY EXEMPTIONS. {¶ 86} Appellant's third assignment of error maintains the trial court erred in awarding the dependency exemptions to appellee for 2003, 2004, and 2005.
 {¶ 87} The trial court's October 20, 2005 Order states:
 {¶ 88} "7. Effective for the 2003, 2004 and 2005 tax year, Melinda shall take their two children as dependents for the federal and state tax exemption. William has support arrearages for each of these years. William may take one child as a dependent when his support arrearages are paid. This provision negates Paragraph A and B under Section 8 of their Shared Parenting Plan. Paragraph C shall remain."
 {¶ 89} Appellant argues the shared parenting plan required he be current in the payment of child support at the conclusion of each calendar year, and not later than January 15 of the succeeding year. The plan did not require he be current in all of his support payments, only the child support obligation. R.C.3119.82.
 {¶ 90} Appellant maintains he was in substantial compliance with his child support obligation through the date of trial, and the court could not have known whether he was in compliance with his child support obligation at the end of 2005. Appellant asserts CSEA records require allocation of payments to child support first and then to spousal support; accordingly, the only evidence before the trial court was that appellant was current in his 2003 and 2004 obligation for child support.
 {¶ 91} Upon review of the record, in light of the shared parenting plan provisions and the CSEA records, appellant is current in his child support obligations for the years 2003 and 2004, and as of the date of the order could not yet have been determined to be delinquent with regard thereto for the year 2005. Accordingly, we find the trial court erred in awarding the dependency exemptions to appellee based solely on appellant's alleged spousal support arrearages.
 {¶ 92} The third assignment of error is sustained.
 IV. ATTORNEY FEES RELATIVE TO CONTEMPT {¶ 93} Upon review of appellant's merit brief, we find appellant has exceeded the maximum page limit for the filing of briefs with this Court, pursuant to Local App. Rule 16(B). Accordingly, we decline to address appellant's final assignment of error.
 {¶ 94} For the reasons stated above, the October 20, 2005 Order of the Delaware County Court of Common Pleas, Domestic Relations Division, is affirmed, in part; reversed, in part, and remanded for further proceedings consistent with the law and this opinion.
By: Hoffman, J., Farmer, J. concur Wise, P.J., concurs in part and dissents in part
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Delaware County Court of Common Pleas, Domestic Relations Division, is affirmed, in part; reversed, in part, and remanded for further proceeding consistent with the law and our opinion. Costs to be divided equally.