[Cite as *In re K.P*, 2012-Ohio-1094.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK   COUNTY**

IN THE MATTER OF:

K.P. and K.P.

        :
        :     Appellate Case No. 2011-CA-68
        :
        :     Trial Court Case Nos. 2004-JUV-580
        :                  2004-JUV-581
        :
        :
        :     (Criminal Appeal from
        :      Common Pleas Court)
        :

. . . . . . . . . . .

## O P I N I O N

Rendered on the 16th day of March, 2012.

. . . . . . . . . . .

GREGORY K. LIND, Atty. Reg. #0055227, One South Limestone Street, Ground Floor, Suite D, Springfield, Ohio 45502
      Attorney for Appellant

JAMES E. HEATH, Atty. Reg. #0003757, Ronemus & Heath Co., L.P.A., 5 East Columbia Street, Springfield, Ohio 45502
      Attorney for Appellee

. . . . . . . . . . . . .

HALL, J.

{¶ 1}　Eric Poling appeals a juvenile court's child-support order. Poling contends that, in calculating his gross income, the court incorrectly included income earned by his wife. Poling

also contends that the court incorrectly failed to reduce his income by expenses incurred and paid by the business that he owns. In this case, the court's inclusion of these amounts was reasonable. Therefore we affirm.

## A. The Evidence Presented

{¶ 2} K.P. and K.P. are Poling's daughters. He and the girls' biological mother (who recently died) were never married. The girls live with their maternal grandmother, Marjorie Flynn, who is their legal guardian. Under an agreed entry, Poling paid Flynn $50 each week in child support.[1] Flynn moved to increase this amount.

{¶ 3} A hearing was held before a magistrate. The pertinent evidence presented was Poling's testimony and two tax returns for 2009. One is a partnership return (Form 1065) filed by Central Ohio Roofing Restoration, LLC, a company that Poling and his wife jointly own. According to the return, Poling and his wife each own a 50% interest in the roofing company. On gross receipts of $127,482 the company's income was $240. Deducted were expenses totaling $102,302 and guaranteed payments to the husband and wife partners totaling $24,940. Among the expenses were $11,000 in vehicle expenses and $3,120 in telephone expenses. Poling's share of the guaranteed payments was $18,200. (His wife received the rest.) The other tax return is Poling and his wife's jointly filed individual return (Form 1040). They claimed $408 in wages and salaries. And they claimed $25,180 in partnership income (the guaranteed payments from the roofing company plus the company's income). Poling's wife claimed $9,407 of net income as the sole proprietor of a related home-repair business called Ace Home Services.

---

[1] Under the same entry, the biological mother was to pay Flynn $25 each week.

{¶ 4} Although his wife alone claimed the income from Ace, at the hearing before the magistrate, Eric said that he had an interest in Ace. When asked what his interest was, he replied, "I'm a member of that business, also." (Mag. Tr. 9). (Eric said that his wife was the managing member.) Poling did not testify about the $9,407 specifically. But he did explain his income this way:

A.     My income is combined from Ace Home Services and Central Ohio Roof Restoration. The companies have to guarantee me payments of $18,200.

Q.     But you're one of the owners of the company, are you not?

A.     Correct.

Q.     So, you're guaranteeing yourself $18,200, correct?

A.     Those are my guaranteed payments no matter what happens. Any profits that the company makes above and beyond would be allocated by the managing member and then any profits that were allocated would be shown, I think that would be on the K-1 [part of Form 1065]. (Mag. Tr. 9-10).

Regarding the relationship between the two businesses, Poling explained that "Central Ohio Roof Restoration is an LLC registered with the Secretary of State. Ace Home Services is a trade name that operates under Central Ohio Roof Restoration, so in essence, it's a dba, but it is also a registered trade name. We also have another registered trade name, too, [The Attic Doctor] but it doesn't have any tax returns yet. It was just created this year." (Mag. Tr. 14-15).

{¶ 5} The magistrate recommended that Poling's monthly child-support obligation be increased to $709.79. In its calculation of Poling's gross income, in addition to the $18,200 in guaranteed payments, the magistrate included the $9,407 from Ace and the $11,000 in vehicle expenses and $3,120 in telephone expenses. Poling objected to the inclusion of these three

amounts.

{¶ 6} The trial court held a supplemental evidentiary hearing at which the tax returns were presented and Poling again testified. Also testifying was Poling's accountant, who had prepared both tax returns. Poling testified that the roofing company was organized as a limited liability company (LLC) and did "mainly roofing, [and] home repairs." (Supp. Tr. 6). Unlike his testimony before the magistrate, he said that the $18,200 guaranteed payment came only from the roofing company. Also unlike his former testimony, Poling said that it was his wife who owned Ace. He agreed that, from Ace, according to the tax return, she received $9,407. Poling testified that in 2007 or 2008 he purchased a 2006 Ford E150 van for around $11,000. In 2009 he purchased a new 2009 Chevy Silverado truck for around $19,000. Poling testified that in 2009 he used both vehicles for business purposes and traveled a combined 20,000 miles. He admitted that he also used them for personal purposes, but explained that he rounded down to 20,000 miles to account for this use. He testified that the telephone expense was incurred from three lines: one is a business line that runs into his home office for the roofing company, "the other lines that are included in that deduction would be the two cell phones, one that my wife has and one that I have." (Supp. Tr. 10).

{¶ 7} The accountant testified that he prepared both tax returns based solely on a summary of income and expenses that Poling provided him on a handwritten piece of paper. Poling agreed that he provided the accountant with no substantiating documents–"just the numbers." (Supp. Tr. 17). The accountant testified that the vehicle-expense deduction is the standard deduction allowed for business-use of a vehicle. He said that he calculated it by multiplying 20,000 miles (the number of miles Eric reported having driven the vehicles for business purposes) by 55 cents per mile, the standard mileage rate for business use in 2009.

**{¶ 8}** Poling also testified that his "wife has a lot of money." (Supp. Tr. 22). She has money, he said, from selling a towing and recovery company that he owned and operated until the day he entered prison. In 2002, a federal court sentenced Poling to prison for over four years for conspiracy. Shortly after entering prison, he transferred the business to his wife under a written agreement. She continued to operate it until 2005 or 2006, when she sold it. (Poling said that he does not know the selling price.) Said Poling, "I have a lot of–I shouldn't say I have, my wife has a lot of cash left over prior to me going to prison [from] * * * the sale of the business and some of the assets of the business, and also an insurance payment." (Supp. Tr. 15-16). Poling admitted that "most of the time" he lives on that money. (Supp. Tr. 23). He further said that he was "obviously" benefitting from that money. (Supp. Tr. 23). Poling estimated that it costs $3,000 for he, his wife, and their three children to live each month. He said that he did not know his specific financial situation. When asked, "Why don't you know how much money you make and how much money you spend," Poling answered, "I don't know." (Supp. Tr. 27). Asked why he didn't know, Poling answered, "I guess I'm not that worried about it." (Supp. Tr. 27). Indeed, in 2009 Poling purchased, for personal use, a new 2009 Chevy Traverse for over $35,000.

**{¶ 9}** At the end of the hearing, the trial court said that it simply did not believe Poling's testimony about his finances:

> The bottom line in this case, as far as I'm concerned, is that there has been a shifting by Mr. Poling of assets to his wife. And that's fine; he can do that for tax purposes if he wants to try to, but he can't do it for child support purposes. * * *
>
> Bottom line is, as far as I am concerned, that income is his income. It's

not just household income, and even if it were, the Court has the right to include it. So he is not entitled to a reduction of any moneys that was assessed to him in the form of Ace Home Services of $9,407.

He's not entitled to claim $18,200 as his only income in Central Ohio Roof Restoration, which apparently is co-owned with his wife. Those are, as far as I'm concerned and by legal definition, just sweetheart deals with his wife and an effort by him to try to pay less child support. I'm not going to allow him a credit for either of those two just because his wife may have an ownership interest in them.

I do not believe, by any sense, that he is not realizing income from either of those sources, and I do not believe that he has provided, nor has his accountant been provided with sufficient evidence to establish the $11,000 as claimed income for truck expenses or $3,120 for claimed phone expenses. I don't believe that for a minute either.

Sometimes in these kinds of cases, this gets down to a matter of believability. I don't believe any of that. (Supp. Tr. 46-47).

The court concluded that the magistrate did not err in its gross-income calculation, and it overruled Poling's objections.[2]

**B. The Standard of Review**

{¶ 10} "Absent an abuse of discretion * * * [a] factual determination will not be disturbed on appeal." *Rock v. Cabral*, 67 Ohio St.3d 108, 112, 616 N.E.2d 218 (1993), citing

---

[2]The court did conclude that the magistrate erred by failing to consider the social security benefits that Flynn began to receive after the children's mother died. The court reduced Eric's child-support obligation to $509.79.

*Booth v. Booth*, 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989). "'The term "abuse of discretion" * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Id*., quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). We are "guided by a presumption that the findings of the trier-of-fact were indeed correct." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *see Mahlerwein v. Mahlerwein*, 160 Ohio App.3d 564, 2005-Ohio-1835, 828 N.E.2d 153, ¶ 19. This presumption of correctness recognizes, in this case, that "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id*. Therefore "a reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal." *Id*. at 81.

## C. The Law Governing a Parent's Child-Support Obligation

{¶ 11} A parent's child-support obligation is generally based on that parent's "gross income," *see* R.C. 3119.021, which is generally "the total of all earned and unearned income from all sources during a calendar year." R.C. 3119.01(C)(7). When determining gross income, "the trial court must verify the income 'with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns.'" *Foster v. Foster*, 150 Ohio App.3d 298, 2002-Ohio-6390, 780 N.E.2d 1041, ¶ 12 (12th Dist.), quoting R.C. 3119.05(A). Accordingly, the parent has the burden to verify his income.

{¶ 12} Usually, tax returns are not sufficient by themselves. "Federal and state tax documents provide a proper starting point to calculate a parent's income, but they are not the sole factor for the trial court to consider. In many cases, income for child support purposes is not equivalent to the parent's taxable income." (Citation omitted.) *Id.* at ¶ 12-13, citing *Helfrich v. Helfrich*, 10th Dist. Franklin App. No. 95APF12-1599, 1996 WL 532185 (Sept. 17, 1996). This is because "the theory behind determining income for child support purposes is different from that of stating income for tax purposes." *Offenberg v. Offenberg*, 8th Dist. Cuyahoga App. Nos. 78885, 78886, 79425, and 79426, 2003-Ohio-269, ¶ 29; *see Marcus v. Marcus*, 2d Dist. Greene App. No. 98 CA 83, 1999 WL 960772, *5 (July 30, 1999). The theory behind determining income for child-support purposes is to "'determin[e] how much [of the parents'] money is actually available for child support purposes.'" *Marcus* at *5, quoting *Helfrich* at *3. Accordingly, income is included "whether or not the income is taxable." R.C. 3119.01(C)(7). "'This recognize[s] the economic reality that all money earned by a parent, irrespective of its taxability, is in fact income to that parent.'" *Offenberg* at ¶ 29, quoting *Helfrich* at *3. Consequently, when determining a parent's income, the trial court must beware of "'"the possible manipulation of the numbers contained on the return to conceal income which, as a practical matter, may be available for child support purposes."'" *In re Harris*, 168 Ohio App.3d 1, 2006-Ohio-3649, 857 N.E.2d 1235, ¶ 50 (2d Dist.), quoting *Offenberg* at ¶ 30.

## D. The Ace Income

{¶ 13} "When the court * * * calculates the gross income of a parent, it shall not include any income *earned* by the spouse of that parent." (Emphasis added.) R.C. 3119.05(E). *Compare* R.C. 3119.01(C)(7) (defining "gross income" as "the total of all earned *and unearned* income" (Emphasis added.)). Poling contends, in the first assignment of error, that the trial court

included his wife's income by including the $9,407 of Ace income that his wife claimed on their tax return. We cannot say that the court abused its discretion by including this amount in Poling's gross income.

{¶ 14} The only evidence suggesting that the $9,407 was Poling's wife's income is the individual tax return. Poling presented no evidence or testimony about how she earned this income. Also, Poling testified that the roofing company does not only roofing but also home repairs, and according to the individual tax return, Ace offers home-repair services. Given Poling's testimony about the intimate link between the two businesses, the trial court could have rejected the idea that the roofing company and Ace are in competition. The trial court could have found that Poling failed to show that his wife earned the amount she claimed from Ace.

{¶ 15} Poling cites *Weisgerber v. Weisgerber*, 5th Dist. Delaware App. No. 05CAF110074, 2006-Ohio-5628, in which the Fifth District held that R.C. 3119.05(E) clearly excluded from appellant's income the salary that his business paid his wife. But in that case there was evidence that the wife *earned* the salary by keeping the company's books, doing clerical work, and taking on other responsibilities for the business. Here there is no evidence that Poling's wife did anything to earn income from Ace. Poling did not so much as hint at how his wife "earned" the Ace income.

{¶ 16} The first assignment of error is overruled.

**E. The Business Expenses**

{¶ 17} A parent's "gross income" includes "self-generated income," R.C. 3119.01(C)(7), which is the "gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and

rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts," R.C. 3119.01(C)(13). These expenses are "actual cash items expended by the parent or the parent's business and include[] depreciation expenses of business equipment as shown on the books of a business entity." R.C. 3119.01(C)(9)(a). They "do[] not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business." R.C. 3119.01(C)(9)(b). Noncash deductions are excluded so that "'a parent's gross income is not reduced by any sum that was not actually expended in the year used for computing child support.'" *Foster*, 150 Ohio App.3d 298, 2002-Ohio-6390, 780 N.E.2d 1041, at ¶ 19, quoting *Baus v. Baus*, 72 Ohio App.3d 781, 784, 596 N.E.2d 509 (9th Dist.1991).

{¶ 18} In the second assignment of error, Poling asserts that the trial court failed to deduct actual cash expenses when it included the $11,000 in vehicle expenses and the $3,120 in telephone expenses that he (or the roofing company) deducted on the roofing company's tax return. Again, we cannot say that the trial court abused its discretion.

{¶ 19} With business deductions on tax returns courts should be concerned that "'legitimate business expenses for income tax purposes may also be personal benefits for a parent, freeing up other income for possible child support distribution.'" *In re Harris*, 168 Ohio App.3d 1, 2006-Ohio-3649, 857 N.E.2d 1235, at ¶ 50, quoting *Offenberg*, 2003-Ohio-269, at ¶ 30. Here, Poling did not provide his accountant with any documents that substantiated either the vehicle expense or the telephone expense. Nor, despite knowing that these expenses would be issues at the hearing, did Poling present any substantiating documents to the trial court–not even a single telephone statement. The only documentary evidence of these expenses that Poling presented was the tax return.

**{¶ 20}** The trial court determined that Poling failed to substantiate the vehicle and telephone expenses claimed on the roofing company's tax return. In this case, given Poling's failure to present documents verifying his income, the conceptual difference between reported taxable business income and income available for child support, and the deference owed the trial court's factual findings, including its determination of Poling's credibility, we cannot say that, by including the $11,000 vehicle expense and the $3,120 telephone expense in Poling's gross income, the trial court abused its discretion.

**{¶ 21}** The second assignment of error is overruled.

**{¶ 22}** The juvenile court's child-support order is affirmed.

. . . . . . . . . . . . .

FAIN and FROELICH, JJ., concur.


Copies mailed to:

Gregory K. Lind
James E. Heath
Hon. Thomas J. Capper