JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Douglas J. Zinni ("Douglas"), executor of the estate of Jerry A. Zinni ("decedent"), appeals the probate court's decision on the following motions: an application for attorney fees filed on his behalf, an application for attorney fees filed on behalf of his brother, Gerald Zinni ("Gerald"), and Gerald's motion for partial distribution. Finding no merit to the appeal, we affirm.
 {¶ 2} The facts and procedural history of this matter were previously set forth in the prior appeal, In re Zinni, Cuyahoga App. No. 89599,2008-Ohio-581 ("Zinni I "):
 "This case involves a dispute between the heirs of decedent's estate. *** [The] decedent died testate on February 14, 2003. Decedent had four adult sons [Douglas, Gerald, Richard, and Nicholas]. His last will and testament was admitted to the Cuyahoga County Probate Court on April 28, 2003. Pursuant to the decedent's will, his son, Douglas, *** was appointed executor of the estate. ***
 An inventory and appraisal was filed on June 6, 2003 and was approved on June 25, 2003 [the inventory filed demonstrated assets of approximately $108,000]. Subsequently, an application to extend administration was filed on November 21, 2003. As a basis for the application to extend administration, [Douglas] stated that he had engaged special counsel to determine if there were any additional assets of the estate other than those listed in the original inventory and appraisal filed. An extension until March 31, 2004 was requested to accomplish this task.
 Thereafter, a first partial account and a second application to extend administration were filed on May 18, 2004. Again, [Douglas] required additional time to complete the administration of the estate in order to continue the investigation. On April 20, 2005, a second partial account and a third application to extend administration were filed by [Douglas]. [The probate court heard and approved Douglas's second partial account.] On *** *Page 4 
October 30, 2006, a third partial account and a fourth application to extend administration were filed with the lower court. ***
 On *** April 13, 2006, an application for attorney fees was filed by [Douglas] requesting approval of payment of attorney fees to Attorney [James] Richlak [who was hired by Douglas to assist in the administration of the estate] in the amount of $3,000. This fee application was heard and granted on May 24, 2006. On June 1, 2006, an application for attorney fees was filed by Attorney [Richard] Oviatt [special counsel hired by Douglas to investigate the missing assets of the estate] requesting the approval of payment of attorney fees in the amount of $17,071.34 and expenses in the amount of $1,883.84. ***
 On June 30, 2006, a motion for partial distribution and an application for attorney fees were filed on behalf of Gerald ***. This application for attorney fees was based on fees incurred by Gerald *** in responding to request for documentation and information regarding his father's assets and for additional fees associated with the lawsuit.
 A Cuyahoga County Probate Court magistrate held a hearing on the applications for attorney fees and the motion for partial distribution on August 24, 2006. After hearing the testimony of attorneys Richlak, Oviatt, and Margaret Metzinger [Gerald's attorney], the magistrate issued his decision on September 15, 2006. The magistrate determined that Oviatt's application for fees should be denied, stating: `The fees were unauthorized and the fees provided no benefit to the estate. The investigation by Douglas Zinni was unauthorized under the law. The estate should be reimbursed by Douglas Zinni personally, for any expenditures related to this investigation.'
 The magistrate further denied the application for fees filed by Gerald ***, except for $500 incurred in preparing and filing the motion for partial distribution. The magistrate granted the motion for partial distribution and awarded fees for the preparation and filing of the motion, determining that those fees were appropriately paid by the estate because the motion provided a benefit to the estate as a whole.
 [Douglas] filed objections to the magistrate's decision on September 28, 2006. On October 16, 2006, Gerald *** filed a response to the executor's objections. After two continuances were requested by the executor and granted by the probate court, a hearing on the objections was held with the probate court judge on February 22, 2007. The probate court overruled the executor's objections and adopted the magistrate's decision." *Page 5 
 {¶ 3} Douglas appealed the probate court's decision in Zinni I, raising five assignments of error for our review. However, the probate court adopted the magistrate's decision without separately stating its own judgment in its February 2007 journal entries. As a result, this court dismissed the appeal for lack of final appealable order. SeeZinni I.
 {¶ 4} After our dismissal, the probate court amended the entries by including its own judgment. Douglas appeals again, raising the same five assignments of error for our review, which shall be discussed together where appropriate.
 {¶ 5} In the first assignment of error, Douglas argues that the trial court abused its discretion by ordering the distribution of the estate's assets when his investigation revealed that "several million dollars were unaccounted for and missing from decedent's estate." He claims that distribution is premature at this time. In the fifth assignment of error, he argues that the court's determination that the investigation by Oviatt and the private investigators was "fruitless" was against the manifest weight of the evidence.
 {¶ 6} However, in setting forth these arguments, Douglas fails to cite any authority to support his claims. We note that an appellate court may disregard an assignment of error pursuant to App. R. 12(A)(2) if an appellant fails to cite any legal authority as required by App. R. 16(A)(7). See, also, Citta-Pietrolungo v. Pietrolungo, Cuyahoga App. No. 85536, 2005-Ohio-4814, ¶ 35. "If an argument exists that can *Page 6 
support this assignment of error, it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), Summit App. Nos. 18349 and 18673.
 {¶ 7} Because Douglas failed to cite any legal authority in support of his arguments, we decline to review the first and fifth assignments of error. In the second assignment of error, Douglas argues that the court erred in denying Oviatt's application for attorney fees when some of the fees were approved in the second partial account in May 2005. In the third assignment of error, he argues that the trial court abused its discretion by ordering Douglas to reimburse the estate for expenses incurred in investigating the "missing assets."
 {¶ 8} Douglas argues that Oviatt's request for attorney fees was reasonable and incurred for the greater benefit of the estate. He notes that Oviatt's fees were approved in the second partial account in May 2005. Thus, he contends that the court erred in requiring him to reimburse the estate for the expenditures related to the investigation and denying Oviatt's fees.
 {¶ 9} Under R.C. 2113.36, an attorney may be hired by the executor to assist in the administration of the estate and will be reimbursed for any reasonable necessary attorney fees incurred for that purpose.[1]
The payment of reasonable attorney fees lies within the sole discretion of the probate court. In re Keller (1989), 65 Ohio App.3d 650, 655,584 N.E.2d 1312. *Page 7 
 "Reasonable attorney fees must be based upon the actual services performed by the attorneys and upon the reasonable value of those services as determined from the evidence which must substantiate the award of fees as being reasonable. Fees which are reasonable must be reasonable both from the standpoint of the attorney rendering the services and from the standpoint of the estate out of which payment is being made. The ultimate determination of reasonableness must take into consideration all the factors relating to reasonableness of the fees in the particular case." In re Estate of Love (1965), 1 Ohio App.2d 571, 578-579, 206 N.E.2d 39.
 {¶ 10} In the instant case, Douglas filed a second partial account in April 2005 indicating that money was disbursed to Oviatt for investigative fees. In May 2005, the court held a hearing on the matter and approved the accounts listed in the estate. Then in June 2006, Oviatt submitted an invoice for 101.25 hours of work in investigating the missing assets. The fee statement contained $17,071.34 in professional services and $1,883.84 in expenses.
 {¶ 11} In denying the motion for attorney fees filed by Oviatt, the court found that the time expended by Oviatt did not benefit the estate. The court noted that Oviatt had been paid approximately $15,000 by the estate for his investigative duties. Furthermore, at the time of the hearing the estate had been open for more than three years and no evidence had been produced to substantiate Douglas's claim that the estate was missing assets. Douglas did not file a complaint alleging the misappropriation of the missing funds, nor had he offered any possible leads for the missing assets.[2] The court also noted that there are no other debts of the *Page 8 
decedent's estates other than the ongoing investigative costs. Because Oviatt had already been paid $15,000 by the estate and the court found that the investigation was fruitless, we find that the court did not abuse its discretion in denying Oviatt's application for attorney fees.
 {¶ 12} As part of its judgment, the court also ordered Douglas to personally reimburse the estate for any expenditures related to the investigation. Although the court had previously approved Douglas's second partial account, which included fees for Oviatt, the court exercised its discretion and vacated this award of Oviatt's fees. We find no abuse of the court's discretion in vacating its prior entry because the investigation uncovered no missing assets.
 {¶ 13} Therefore, the second and third assignments of error are overruled.
 {¶ 14} In the fourth assignment of error, Douglas argues that trial court erred by awarding attorney fees to Metzinger when the expenses Gerald incurred were for his personal benefit and not for the benefit of the estate. He argues that the trial court erred in granting Gerald's motion for attorney fees because Gerald had "unclean hands." Douglas alleges that since Gerald began to control his father's affairs, his father's net worth began to decline.[3]
 {¶ 15} In certain circumstances, a probate court may allow payment of reasonable fees from the estate to an attorney employed by a beneficiary where *Page 9 
such services were necessarily and successfully rendered to the benefit of the whole estate. In re Keller at 656. "It must be noted, however, that an attorney applying for such payment must present himself before the equity court `with clean hands.'" Id. at 658. The test for clean hands has been defined as follows:
 "*** [A] court is not justified in allowing payment of attorney fees and expenses out of the estate `when the beneficiaries litigate questions capriciously or without reason; if the issues are immaterial or trifling, or if the conduct of a party is vexatious and litigious, or if he raises improper points, or in any way creates unnecessary delay or expense***.'" Id. (citations omitted).
 {¶ 16} In the instant case, Douglas issued Gerald between 20 to 30 subpoenas seeking financial information concerning the alleged missing millions. He "believe[s] that Gerald *** and Richlak breached their fiduciary duties and either directly absconded, or assisted the other to abscond, with the missing assets." Subsequently, Gerald hired Metzinger to represent him in this matter. As part of her representation, Metzinger filed a motion for partial disbursement because the estate had been pending for three years and no distribution had been made. She also sought payment from the estate for her fees and expenses related to Gerald's defense, which totaled $7,000. She argued that her fees were reasonable because the estate had compelled Gerald to defend himself against a "meritless investigation."
 {¶ 17} In reviewing Metzinger's fees, the court found that the majority of her services consisted of defending Gerald against the investigation. These services directly benefited Gerald and provided no tangible benefit to the estate. However, *Page 10 
the court granted the motion in part, allowing $500 (four hours of work at the rate of $125 per hour) for Metzinger's preparing and filing the motion for distribution because this service benefited the estate.
 {¶ 18} Because the court concluded that it was unjust to keep the estate pending and deprive the heirs of their inheritance, we find that the trial court did not abuse its discretion in awarding attorney fees to Metzinger for her services related to the motion for distribution.
 {¶ 19} Accordingly, the fourth assignment of error is overruled.
Judgment is affirmed.
It is ordered that appellees recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, J., and MARY J. BOYLE, J., CONCUR
[1] The attorney's services must benefit the estate. In re EstateColeman (1988), 55 Ohio App.3d 261, 564 N.E.2d 116; Cowgill v.Faulconer (1978), 57 Ohio Misc. 6, 385 N.E.2d 327.
[2] The court also noted that the decedent's will does not designate any specific powers to Douglas to investigate.
[3] Gerald held the power of attorney for his father and was appointed successor trustee under his father's trust. *Page 1