THE STATE OF OHIO, APPELLANT, *v.* IKNER, APPELLEE.

(No. 74-927—Decided December 17, 1975.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. George Sadd,* for appellant.

*Mr. Alan I. Goodman,* for appellee.

CORRIGAN, J.  In the syllabus to its opinion, incorporated by reference and made a part of its journal entry in this case, the Court of Appeals held:

"1. Trial in a Common Pleas Court on a felony charge based on the same acts as a prior conviction for violation of a municipal ordinance does not constitute double jeopardy, if the crime described in the municipal ordinance is not a lesser included offense of the felony.

"2. The penal philosophy of the doctrine of merger which precludes separate sentences for a violation of R. C. 4945.04(A) [*sic*] (auto theft), and R. C. 2907.30 (receiving or concealing stolen property), also precludes separate sen-

tences for a violation of a municipal ordinance similar to R. C. 4549.04(B) and (D) (operating without consent), and R. C. 4549.04(E) (concealing a stolen motor vehicle), when conviction for the latter two crimes is based upon the same acts and involves the same automobile."

## I.

The first principle pronounced by the Court of Appeals is correct. Obviously, this is a case of two separate offenses, one of which is not included in the other. The first offense, disposed of by the East Cleveland Municipal Court, was for operating a motor vehicle without the owner's consent. There is no requirement of knowledge that the vehicle was stolen in order to convict under the East Cleveland ordinance. Contrariwise, the indictment in the Court of Common Pleas charged that the defendant concealed a motor vehicle knowing or having reasonable cause to believe it was stolen. Clearly, the evidence required to support a conviction on the first charge would not suffice to support a conviction on the second. *Duvall* v. *State* (1924), 111 Ohio St 657.

As was stated in paragraph three of the syllabus in *State* v. *Best* (1975), 42 Ohio St. 2d 530:

"The applicable rule under the Fifth Amendment is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not. A single act may be an offense against two statutes, and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."

The rule is identical where the same act constitutes a violation of a statute and of a city ordinance. Ikner's conviction under the ordinance does not serve to put him in jeopardy as far as the indictment for concealing the motor vehicle is concerned.

*II.*

In connection with paragraph two of its syllabus, the Court of Appeals expatiates on "the penal philosophy of the doctrine of merger * * *." Thereby is pointed up the need for clarification concerning the doctrine of merger in the law of Ohio.

This doctrine was based on the ancient maxim of "nemo bis punitur pro eodem delicto" (no one is twice punished for the same offense). It was established by the common-law courts to alleviate hardships resulting from successive prosecutions where the crime committed had within its terms two or more crimes of different magnitude. The doctrine merged the crime of lesser magnitude into the crime of greater magnitude when the latter was charged against the defendant. Whereupon, if defendant was found not guilty of the crime charged, he could not then be tried for any of the lesser crimes included within the terms of the crime charged

The doctrine of merger was not recognized and was never in force in Ohio. See *Mitchell* v. *State* (1884), 42 Ohio St. 383.

However, R. C. 2945.74 provides that, if a defendant is charged with a crime which includes different degrees or lesser included offenses, or where an attempt is an offense, the jury may find the defendant not guilty of the offense charged but guilty of a different degree, or lesser included offense, or an attempt (if defined as a crime) as shown by the evidence.

Such was the state of the law in this area until July 14, 1971, when this court rendered a decision in *State* v. *Botta*, 27 Ohio St. 2d 196.

What *Botta* actually did was to hold, as to the principal offender who steals a motor vehicle, that the acts of receiving or concealing the same motor vehicle knowing it to have been stolen are "considered merged" in the auto theft crime so as to preclude separate sentences for the several crimes. *Botta* is not dispositive of the instant case.

The judgment of the Court of Appeals is reversed,

and the judgment of the Court of Common Pleas is ordered to be reinstated.

*Judgment reversed.*

O'NEILL, C. J., HERBERT and W. BROWN, JJ., concur.
STERN, CELEBREZZE and P. BROWN, JJ., dissent.

WILLIAM B. BROWN, J., concurring. Inasmuch as R. C. 4549.04 has been repealed and since the General Assembly has determined[1] that an accused cannot be convicted for multiple counts arising out of the *same transaction*— a standard not embraced by the state or federal double jeopardy clauses (*State v. Best* [1975], 42 Ohio St. 2d 530, 534)—this case fails to present any question of cosmic significance.

In addition, the alleged double jeopardy problem is fashioned from whole cloth.

The ordinance initially violated is essentially identical to subsection (D) of R. C. 4549.04.

The pertinent subsections of R. C. 4549.04 read:

"(A) No person shall steal any motor vehicle.

"(B) No person shall purposely take, operate, or keep any motor vehicle without the consent of its owner, and either remove it from this state, or keep possession of it for more than forty-eight hours.

---

[1]R. C. 2941.25, effective January 1, 1974, reads:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

"* * *

"(D) No person shall purposely take, operate, or keep any motor vehicle without the consent of its owner.

"(E) No person shall receive, buy, operate, conceal, or dispose of a motor vehicle that was obtained by means of an auto theft offense, knowing or having reasonable cause to believe it to have been so obtained."

I would construe and classify those provisions as follows:

(D), a misdemeanor, which prohibits the taking, and short-term keeping, of a vehicle (joyriding for less than 48 hours and not across state lines).

(B), a felony, which prohibits the taking, and keeping, of a vehicle for more than 48 hours (the time element constituting a statutory presumption that the keeper intends to permanently deprive the owner of his vehicle).

(A), a felony, which prohibits the taking, and keeping, of a vehicle with an intent to permanently deprive the owner of his vehicle, regardless of the period of retention or whether the vehicle crosses state lines.

(E), a felony, which prohibits receiving, buying, operating, concealing, or disposing of a vehicle which was taken by *another* (*State* v. *Botta* [1971], 27 Ohio St. 2d 196) who had the intent to permanently deprive the owner of his vehicle.

For one who would *take* a vehicle, multiple punishments under subsections (A), (B), and (D) would be wholly permissible.

In the present case, Ikner may also legitimately be tried for violating subsection (E) because he has failed to argue that he, as the thief, should possibly not be tried under a receiving stolen property provision. *State* v *Botta*, *supra*.

STERN, J., dissenting. The defendant in this case was tried and pleaded no contest to a misdemeanor auto theft, and was subsequently indicted and convicted, for the same

138

acts, of the felony charge that he "unlawfully did receive, buy, operate or conceal" the same automobile.[2]

I cannot agree with the majority that it is in any way clear from the elements of these offenses, their legislative history, or from basic principles of common law and statutory construction that any such dual punishment was intended by the General Assembly, and for that reason I dissent.

It has long been a familiar common-law principle that a thief cannot be convicted of both stealing and receiving the same property. The simple justice of this principle is apparent—every taking of property necessarily includes a concealment and keeping from the owner, so that every thief would otherwise be subject to two or more convictions and punishments for the same act.

Statutory enactments of these offenses are subject to the same principle, and this court has held that a prosecution for receiving and concealing stolen property may not be maintained against the thief, because the purpose of the statute making receiving and concealing a separate offense from the theft was " * * * to punish those who, when a larceny has been committed, receives or conceals the fruits of that crime; and to include the thief within that class would subject him to punishment twice or more for a single criminal transaction." *Smith* v. *State* (1898), 59 Ohio St. 350, 361. In actual effect, this principle is one of statutory construction, for the power to define offenses and to assign punishment lies with the General Assembly. As long as substantive due process is accorded and the punishment does not violate the Eighth Amendment's prohibition against cruel and unusual punishment, the General Assem-

---

[2]For purposes of double jeopardy, a state and a municipality are a single sovereignty and the trial of a person in Municipal Court would bar prosecution of such person for the same offense in the proper state court. *Waller* v. *Florida* (1970), 397 U. S. 387; *State* v. *Best* (1975), 42 Ohio St. 2d 530, 330 N. E. 2d 421. The statutory provisions involved herein were repealed effective January 1, 1974. The analogous section in the new Criminal Code is R. C. 2913.03—unauthorized use of a vehicle.

bly may statutorily impose a number of different penalties for a single act, or for separate aspects of that act.

Where one offense is necessarily included within a higher offense, the ordinary presumption is that the General Assembly intended to impose only the higher penalty, not to cumulate the sentences of all the lesser-included offenses. One convicted of murder is necessarily also convicted of attempted murder, manslaughter, and various other crimes ranging down to simple assault (see Committee Comment to R. C. 2941.25), but he receives only the sentence statutorily mandated for the highest offense for which he was convicted, and the attachment of jeopardy bars any subsequent prosecution for any of the lesser-included offenses. R. C. 2943.09.

Similarly, in theft offenses, it is generally held that, as for the thief, the offense of receiving or concealing the stolen goods is a part of the theft itself, because "* * * there is present in the larceny a concealment of the property stolen, with intent to deprive the owner of it * * *." *Smith* v. *State, supra.* By the same act, a thief necessarily commits theft and also receives and conceals the stolen property, even though the statutory language of the theft offense does not technically contain all the elements of receiving or concealing. " * * * [T]aking and receiving, as a contemporaneous—indeed a coincidental—phenomenon, constitute one transaction in life and, therefore, not two transactions in law. * * * (This, of course, does not bar Congress from outlawing and punishing as separate offenses the severable ingredients of one compound transaction. See *Gore* v. *United State,* 357 U. S. 386.)" *Milanovich* v. *United States* (1961), 365 U. S. 551, 558-59 (Frankfurter, J., dissenting). The General Assembly might nonetheless choose to impose separate punishments for an unlawful taking of property and also for misdealings with that property, despite the ordinary presumption against imposing dual punishment—the question is whether it intended to do so in this case.

Ordinarily, legislative intent is manifest in the ele-

ments of the offense. But in this case, contrary to the majority, it is not at all clear that the elements of these offenses differ. The majority has simply ignored the word "purposely" in the ordinance. The city ordinance, which tracks the language of R. C. 4549.04 (B) and (D), states that "no person shall *purposely* take, drive or operate any motor vehicle without the consent of the owner." (Emphasis added.) R. C. 4549.04(E) provides that: "No person shall receive, buy, operate, conceal, or dispose of a motor vehicle that was obtained by means of an auto theft offense, knowing or having reasonable cause to believe it to have been so obtained."

If one "purposely" takes, operates or keeps a motor vehicle without the consent of its owner, he violates subsection (D), and if he operates or conceals "a motor vehicle that was obtained by means of an auto theft offense, knowing or having reasonable cause to believe it to have been so obtained," he violates subsection (E). Yet, anyone who "purposely" takes or operates a car without the consent of the owner knows that the vehicle was obtained by theft. Purposely taking or using property without the consent of the owner *is* theft. See R. C. 2913.02. Plainly, anyone who violates subsection (D), by taking a car for a joyride, by that same act violates subsection (E), by operating the car with the knowledge that he took it, just as every other thief necessarily receives and conceals the property he steals. The real anomaly in these statutory provisions is that subsection (E), which forbids various dealings with stolen cars, including receiving and disposing of them, is punishable as a felony, whereas subsection (D), the theft offense itself, is punishable as a misdemeanor. It seems incongruous that a felony could somehow be a "lesser" offense or "included" in a misdemeanor, and it is that incongruity which suggests that the General Assembly might not have intended that this sort of theft be punishable only as a misdemeanor or that a prosecution for the misdemeanor would bar prosecution for the felony.

The legislative history of these sections shows that

both were a part of G. C. 12619 as amended in 1923 (110 Ohio Laws 58), and later recodified as R. C. 4549.04, which punished as a felon:

"Whoever steals any motor vehicle, or whoever purposely takes, drives or operates any motor vehicle without the consent of the owner thereof, or buys or conceals any motor vehicle that has been stolen, knowing it to have been stolen, or knowingly conceals a person who has stolen any motor vehicle * * *."

Both of the provisions in question were part of this single statute, and both were punishable as felonies.

The statutory language remained basically unchanged until 1972, but the penalty section was modified in 1961 (129 Ohio Laws 366), to reduce operating without consent to a misdemeanor. Apparently, the General Assembly intended to establish a lesser penalty for simple joyriding—the taking of a car for a ride without the intent to steal it or permanently deprive the owner of its possession.

The entire statute was rewritten effective March 20, 1972. The language for operation without consent, what became subsection (D), was changed from "take, drive or operate" to "take, operate or keep," and a new subsection (B) was added which made operation without consent a higher offense if the vehicle was removed from the state or kept for over 48 hours. The offense of concealing a stolen motor vehicle, what became subsection (E), was broadened in language, although apparently not changed in substance. The element of knowledge that the car was stolen was expanded to include "reasonable cause to believe" it was stolen. The language "buy or conceal" was expanded to "receive, buy, operate, conceal, or dispose of." The legislative intent clearly was to establish a single offense of knowingly receiving or dealing with stolen autos, although this offense could be committed in any of several ways. *State* v. *Hopkins* (1971), 26 Ohio St. 2d 119, 269 N. E. 2d 595.

What is not clear is whether this offense of receiving or concealing is a separate offense from that of operating

without permission, where both involve the same acts. The two subsections, (D) and (E), were originally part of a single statutory provision. One was set off, not by any change in language, but by a change of penalty. Before that change, it would appear that the familiar common-law rule stated in *State* v. *Botta* (1971), 27 Ohio St. 2d 196, paragraph two of the syllabus, should apply, that "* * * as to the principal offender who steals a motor vehicle, any acts of receiving or concealing the same motor vehicle knowing it to have been stolen" are necessarily included in the theft offense. Subsequent changes in language broaden the application of the two subsections without changing their substance, although the addition of the word "keep" to what became subsections (B) and (D) seems to make them applicable to receivers of stolen cars.

However, a plausible argument can be made that the reduction in penalty for operation without permission was intended to create an offense akin to trespass, where no permanent taking was intended. The offense of receiving or concealing implies a more permanent dispossession of the owner and a more permanent taking, which probably is the reason it was retained as a higher offense, just as the legislative change in 1972 created in subsection (B) a higher offense of operating without consent where the vehicle is taken out of the state or kept for over 48 hours.

Either construction produces anomalous results. On the one hand, it is unlikely that the General Assembly intended to include a felony within a misdemeanor. On the other hand, aside from the similar elements of the two provisions, to hold the offenses separate would mean that the same acts which were punishable before 1961 only as a single felony could, after the reduction of that felony to a misdemeanor, be cumulatively punishable as both a misdemeanor and a felony. Surely it is unlikely that the General Assembly intended, when it reduced the statutory penalty, to increase the actual punishment and subject the accused to two prosecutions.

Neither of these conflicting constructions is wholly

persuasive, but the choice between them should be resolved in favor of lenity to the accused. The language of Mr. Justice Frankfurter in *Bell* v. *United States* (1955), 349 U. S. 81, 83, applies directly and deserves quotation:

"It is not to be denied that argumentative skill, as was shown at the Bar, could persuasively and not unreasonably reach either of the conflicting constructions. About only one aspect of the problem can one be dogmatic. When Congress has the will it has no difficulty in expressing it— when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or from want of sympathy with the purpose of Congress in proscribing evil or anti-social conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read. Nor does it assume that offenders against the law carefully read the penal code before they embark on crime. It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes." See, also, *Prince* v. *United States* (1957), 352 U. S. 322; *Heflin* v. *United States* (1959), 358 U. S. 415; *Rewis* v. *United States* (1971), 401 U. S. 808; Comment, Twice in Jeopardy, 75 Yale L. J. 262 (1965).

The majority today holds that every joyrider under former R. C. 4549.04 could be punished for both a misdemeanor and a felony, notwithstanding the fact that the General Assembly reduced the penalty for joyriding to a

misdemeanor, and specifically provided that it was a felony only when the car was kept for over 48 hours or taken out of the state. Further, by putting this decision in the books alongside *Smith* v. *State* and *State* v. *Botta, supra,* the majority holds in effect that the state may not punish a thief both for theft and receiving a stolen motor vehicle at a single trial, but that it may achieve the same result, without encroaching upon the constitutional protection against double jeopardy, in two trials.

Whether the General Assembly intended to impose two punishments or one for a single act of joyriding may be, to a degree, doubtful; but that doubt should be resolved in favor of lenity to the defendant, who has been convicted and punished for a misdemeanor and is now to be further punished as a felon for the same acts, although it is most unlikely that the General Assembly intended any such result. Accordingly, I dissent.

CELEBREZZE and P. BROWN, JJ., concur in the foregoing dissenting opinion.